UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FEDERAL TRADE COMMISION and          18-CV-1163-LJV-MJR
PEOPLE OF THE STATE OF NEW YORK,     REPORT AND RECOMMENDATION

          Plaintiffs,

  -v-

CAMPBELL CAPITAL LLC, *et al.*,

          Defendants.
_____

      This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 11). Prior to issuing the referral order, Judge Vilardo granted Plaintiffs' motion to temporarily seal this case. (*See* Dkt. Nos. 7, 13).

      Plaintiffs, the Federal Trade Commission ("FTC") and the People of the State of New York ("State of New York," and, collectively with the FTC, "Plaintiffs"), commenced this civil law enforcement action by filing a Complaint for Permanent Injunction and Other Equitable Relief pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §53(b), Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692*l*, N.Y. Executive Law §63(12), and N.Y. General Business Law ("GBL") Articles 22-A, §349, and 29-H, §602. (Dkt. No. 1). Presently before the Court is Plaintiffs' *ex parte* motion for a temporary restraining order with an asset freeze, appointment of a receiver, and other equitable relief, and an order to show cause why a preliminary injunction should not issue against Robert Heidenreich, Campbell Capital LLC, Kahl, Heidenreich, and Nemmer LLC, Urban, Heidenreich, Melendez, and Associates, LLC,

J & V Receivables LLC, Rich Financial LLC, and BCH & Associates Ltd. (collectively, "Defendants"). (Dkt. No. 2). Plaintiffs also move for an expedited hearing on the motion. (Dkt. No. 9).[1] Defendants have not yet been served with the motion papers or complaint. For the following reasons, it is recommended that Plaintiffs' motions be granted and that the proposed orders accompanying the motions be signed and entered.

## BACKGROUND

Plaintiffs' complaint alleges that Defendants engage in debt collection practices in violation of Section 5(a) of the FTC Act, the FDCPA, New York Executive Law §63(12), and GBL §§349 and 601. The Defendants are one individual, Robert Heidenreich, and six entities that the complaint alleges he owns or controls.

In support of their motion for a Temporary Restraining Order, Plaintiffs have submitted a Memorandum of Law, an Appendix of declarations with exhibits, and a certification pursuant to Federal Rule of Civil Procedure 65(b)(1) and Local Rule of Civil Procedure 65(b)(1) ("Plaintiffs' TRO Submission"). (Dkt. Nos. 2-4, 6). The Appendix contains declarations with exhibits from consumers, former employees, investigators from the FTC and New York State Attorney General's Office, and an FTC forensic accountant. (Dkt. No. 6).

According to Plaintiffs' complaint, Defendants' unlawful debt collection practices include pretending to be members of law enforcement, process servers, attorneys, or law firm employees. Using these personas, according to the complaint, Defendants' employees falsely threaten to arrest consumers, accuse them of committing crimes,

---

[1] This Court held an expedited hearing with Plaintiffs' counsel on October 23, 2018. (Dkt. No. 12). To the extent Plaintiffs also seek an expedited hearing before Judge Vilardo in connection with his review of the instant Report and Recommendation, it is recommended that the request be granted for the reasons set forth herein.

threaten to sue consumers, or claim suits have been filed against consumers. The complaint also alleges Defendants make misrepresentations about alleged debts to consumers, including by inflating the amounts of debts they claim consumers owe. In addition, the complaint asserts that Defendants contact third parties about consumers' alleged debts and use abusive language in calls with consumers in violation of the FDCPA and New York state law.

## DISCUSSION

I.   *Standard for Granting Preliminary Injunctive Relief*

In order to grant a motion for preliminary injunctive relief under the FTC Act, the Court must: "(1) determine that the FTC has a fair and tenable chance of ultimate success on the merits and (2) consider the equities." *FTC v. Crescent Publ'g Grp., Inc.*, 129 F. Supp. 2d 311, 319 (S.D.N.Y. 2001). The standard for a grant of injunctive relief under Executive Law §63(12) is similar to that under the FTC Act. *See People v. Apple Health & Sports Clubs, Ltd.*, 174 A.D.2d 438, 438-39 (1st Dep't 1991).

To establish a Section 5(a) claim for "deceptive acts or practices" under the FTC Act, the FTC must show that Defendants have made or engaged in "(1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material." *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 63 (2d Cir. 2006) (citation omitted).

New York Executive Law §63(12) empowers the Attorney General to seek relief whenever a person or business engages in persistent or repeated "fraud or illegality." Section 63(12) defines the words "fraud" or "fraudulent" to include "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression,

false pretense, false promise or unconscionable contractual provisions." N.Y. Exec. Law §63(12). GBL §349 provides that "[d]eceptive acts or practices in the conduct of any business . . . in this state are hereby declared unlawful." GBL § 349(a).

Both the FDCPA and GBL §601 contain specific prohibitions relating to debt collection, including non-exhaustive lists of prohibited conduct. 15 U.S.C. §§1692c, 1692d, 1692e; GBL §601.

II.     *Plaintiffs Have Met the Standard for Preliminary Injunctive Relief*

Plaintiffs have shown through Plaintiffs' TRO Submission that they have a fair and tenable chance of success on the merits. Specifically, Plaintiffs have provided sufficient evidentiary support for their claims that Defendants:

- Impersonate law enforcement personnel, process servers, and lawyers;
- Falsely threaten consumers with arrest and accuse them of committing crimes;
- Falsely claim that consumers are about to be served with legal papers or have already been sued based on the non-payment of debt;
- Engage in "overbiffing," in which they demand more money from consumers than their own records indicate consumers owe;
- Unlawfully disclose consumer debts to third parties, including consumers' employers; and
- Use obscene or profane language in debt collection calls with consumers.

Such practices violate Section 5 of the FTC Act, multiple provisions of the FDCPA, and New York state law.

Plaintiffs' TRO Submission also provides sufficient evidentiary support for their claim that the corporate defendants operate as a common enterprise. When determining whether a common enterprise exists, courts in the Second Circuit consider whether "the

same individuals were transacting an integrated business through a maze of interrelated companies." *Del. Watch Co. v. FTC*, 332 F.2d 745, 746 (2d Cir. 1964). Factors that indicate a common enterprise include whether the nominally distinct entities: "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *FTC v. Consumer Health Benefits Ass'n*, No. 10 Civ. 3551(ILG)(RLM), 2012 WL 1890242, at *5 (E.D.N.Y. May 23, 2012). Of these factors, "no one factor is controlling." *FTC v. Wyndham Worldwide Corp.*, No. 13-1887 (ES), 2014 WL 2812049, at *7 (D.N.J. June 23, 2014) (quoting *FTC v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, at *5 (E.D.N.Y. Aug. 18, 2011)).

Here, Plaintiffs' TRO Submission has provided sufficient evidentiary support for their claims that there is common ownership and control over the enterprise through defendant Heidenreich, who is an officer of several of the corporate defendants. Likewise, there is sufficient evidentiary support for their claim that the finances of the corporate defendants are mingled insofar as they share employees, many of whom work in the same office and utilize shared services.

With respect to individual liability, to obtain injunctive and monetary relief against individuals for injuries to consumers resulting from a company's conduct, the FTC must establish: "(1) that the individuals participated directly in the wrongful acts or practices or that the individual defendants had the authority to control the corporate defendants; and (2) that the individuals had some knowledge of the acts or practices." *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 535 (S.D.N.Y. 2000). Under New York Executive Law §63(12), corporate officers and directors are liable for fraud if they personally

participate in the misrepresentation or have actual knowledge of it. *People v. Apple Health & Sports Clubs, Ltd.*, 80 N.Y.2d 803, 807 (1992).

In this case, Plaintiffs' TRO Submission has provided sufficient evidentiary support for their contention that defendant Heidenreich both controlled the corporate defendants and directly participated in the alleged conduct by managing the operation, distributing scripts threatening lawsuits for employees to use when calling consumers, and encouraging overbiffing. In addition, there is sufficient support for Plaintiffs' contention that defendant Heidenreich had knowledge of the corporate defendants' practices by virtue of his control over the operation and his alleged personal involvement in unlawful activities.

With respect to the equities, there is a compelling public interest in halting illegal debt collection practices. *FTC v. Mallett*, 818 F. Supp. 2d 142, 149 (D.D.C. 2011) ("The public interest in ensuring the enforcement of federal consumer protection laws is strong . . . ."). Here, Plaintiffs' evidence demonstrates that Defendants' operation is permeated with fraud. The imposition of an asset freeze, the appointment of a temporary receiver, and the other relief Plaintiffs seek will have a significant impact on Defendants. However, the relief sought is temporary and the receiver, as the Court's representative, will make a determination as to whether the business can be operated lawfully. Ultimately, there is no legitimate public interest in permitting Defendants to continue operating if their business consists of activities that violate the FTC Act, the FDCPA, and New York state law, and the public equities must receive greater weight than private concerns. *See FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988). Accordingly, the equities favor the imposition of the temporary relief sought by Plaintiffs.

III. *An Ex Parte TRO is Necessary to Preserve the Possibility of Effective Final Relief*

Plaintiffs' request for permanent relief includes disgorgement of Defendants' wrongful gains. The Second Circuit has recognized the Court's authority to grant this type of ultimate relief in cases brought pursuant to Section 13(b) of the FTC Act. *See FTC v. Bronson Partners, LLC*, 654 F.3d 359, 363 (2d Cir. 2011) (holding that Section 13(b) of the FTC Act permits courts to grant ancillary equitable relief, including disgorgement of wrongfully obtained funds). To ensure the possibility of such relief, Plaintiffs ask that the Court enter the proposed *ex parte* Temporary Restraining Order, which includes provisions requiring Defendants and third parties to identify and preserve assets.

The proposed Temporary Restraining Order: (1) enjoins Defendants from engaging in illegal collection practices; (2) freezes the Defendants' assets; (3) appoints a temporary receiver over the corporate defendants; and (4) allows immediate access to records, orders financial disclosures and records preservation by Defendants, and authorizes expedited discovery.

A. *Restraining Illegal Conduct is Appropriate*

The proposed Temporary Restraining Order enjoins Defendants from engaging in unlawful debt collection practices. Such restrictions are eminently reasonable. *See Mallett*, 818 F. Supp. 2d at 150 ("[R]equiring [defendant] to comply with federal law cannot rise to a cognizable burden . . . .").

B. *An Asset Preservation Order Would Preserve the Status Quo*

An asset freeze would prevent dissipation or waste during the pendency of this litigation. *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1113 (9th Cir. 1982) (finding asset freeze appropriate where the objective is "to obtain restitution of moneys fraudulently

obtained"). The Second Circuit has characterized freezing assets "as ancillary relief that facilitates monetary recovery by preserving the status quo pending litigation of statutory violations." *FTC v. Strano*, 528 F. App'x 47, 49 (2d Cir. 2013) (summary order).

An asset freeze is appropriate where there is a significant risk of the dissipation of defendants' assets during the course of the litigation. *See SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1106 (2d Cir. 1972). Here, there is a strong likelihood that assets may be dissipated during litigation based on evidence Plaintiffs have submitted demonstrating that Defendants' operation is permeated by fraud. In addition, Plaintiffs have offered evidence of Defendants' prior dissipation of assets. Specifically, Plaintiffs have provided evidence that Defendants obtained more than $1.7 million from consumers and removed more than one third of that amount from their bank accounts in cash.

C. *A Receiver Would Help Identify and Preserve Corporate Assets*

The appointment of a receiver is "particularly necessary" where "it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste." *SEC v. First Fin. Grp. of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981). The evidence submitted by Plaintiffs regarding the nature of Defendants' conduct, Heidenreich's efforts to hide the enterprise, and the practice of taking significant amounts of cash out of the operation support the conclusion that asset dissipation is likely.

Plaintiffs have recommended James C. Thoman of the law firm Hodgson Russ LLP is best qualified to serve as the Court's temporary receiver in this case based on his qualifications and experience. Having reviewed Mr. Thoman's credentials, it is recommended that he be appointed to act as the Court's temporary receiver in this action.

## D. *Immediate Access, Financial Reporting and Records Preservation, and Expedited Discovery Would Help Identify and Locate Assets*

Plaintiffs request immediate access to Defendants' business premises to preserve records and locate assets. Immediate access is warranted in this case because Defendants might otherwise destroy evidence and dissipate assets.

Plaintiffs' proposed Temporary Restraining Order also would require Defendants to make financial disclosures and preserve records and provides for expedited discovery. District Courts are authorized to depart from normal discovery procedures and fashion discovery by order to meet particular needs in particular cases, which is appropriate here where asset dissipation is likely. Fed. R. Civ. P. 1, 26(d), 34(b); *Fed. Express Corp. v. Fed. Espresso, Inc.*, Civ.A.97CV1219RSPGJD, 1997 WL 736530, at *2 (N.D.N.Y. Nov. 24, 1997) (noting that early discovery is appropriate in some cases, such as cases involving requests for a preliminary injunction).

## E. *Granting the Temporary Restraining Order on an Ex Parte Basis is Appropriate*

An *ex parte* temporary restraining order is warranted in this case. Courts in this district have granted *ex parte* temporary restraining orders with similar provisions in other debt collection cases. *See, e.g.*, *FTC v. 4 Star Resolution LLC*, No. 15-CV-112-WMS (W.D.N.Y. Feb. 10, 2015), ECF No. 29 (granting *ex parte* TRO with asset freeze, temporary receiver, financial reporting, immediate access, and expedited discovery in action against debt collectors); *FTC v. Vantage Point Servs., LLC*, No. 15-CV-0006-WMS (W.D.N.Y. Jan. 5, 2015), ECF No. 11 (same); *FTC v. Federal Check Processing, Inc.*, No. 14-CV-0122-WMS (W.D.N.Y. Feb. 24, 2014), ECF No. 11 (same).

Here, Plaintiffs have submitted ample evidence of Defendants' efforts to evade detection and have demonstrated that there is a substantial risk of asset dissipation and document destruction if Defendants receive advance notice.

## CONCLUSION

For the foregoing reasons, it is recommended that Plaintiffs' motions for an *ex parte* temporary restraining order and related relief (Dkt. No. 2) and for an expedited hearing (Dkt. No. 9) be granted and that the proposed orders accompanying the motions be signed and entered.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Pursuant to 28 U.S.C. §636(b)(1), the undersigned may not issue an order on a motion for injunctive relief, but he may issue a report and recommendation for the consideration of the District Judge. In this action, Plaintiffs have requested relief on an *ex parte* and expedited basis. For the reasons discussed above, Plaintiffs' request for relief on an *ex parte* and expedited basis is necessary in this case and should be granted.

While 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil Procedure Rule 72 direct the Court to give all parties notice of the Report and Recommendation and fourteen days to object to it, providing notice and an opportunity to object in this case would likely lead to asset dissipation and the destruction of documents. Moreover, Judge Vilardo has directed the entire case file of this matter to be temporarily sealed, effectively preventing Defendants from receiving notice of any pleadings in this matter until the seal is lifted. Federal Rule of Civil Procedure 65 provides for the issuance of a temporary restraining order without notice in appropriate circumstances, which Plaintiffs have shown to be the

case here.  As such, providing Defendants with notice and time to object to the Report and Recommendation would be contrary to the interest of justice and would be inconsistent with Rule 65, and it is therefore recommended that the notice and objection periods provided for in 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil Procedure Rule 72 be dispensed with in order to preserve Judge Vilardo's ability to provide Plaintiffs with expedited *ex parte* relief and in order to comply with Judge Vilardo's order sealing this matter.

**SO ORDERED**.

Dated:   October 24, 2018
         Buffalo, New York

/s *Michael J. Roemer*            .
MICHAEL J. ROEMER
United States Magistrate Judge